**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**
**WESTERN DIVISION**

---

| | | |
|---|---|---|
| TERRANCE WILLIAMS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 2:21-cv-02113-JTF-atc |
| | ) | |
| v. | ) | |
| | ) | |
| DERRIUS DAVIS, ET AL., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

---

**ORDER PARTIALLY DISMISSING THE CONSOLIDATED COMPLAINT WITHOUT PREJUDICE (ECF NOS. 1 & 6);**
**GRANTING LEAVE TO AMEND THE DISMISSED CLAIMS;**
**PROCEEDING THE CONSOLIDATED COMPLAINT'S EXCESSIVE FORCE CLAIM AGAINST DEFENDANTS DAVIS AND STEWART;**
**AND DENYING PENDING MOTIONS (ECF NO. 7 & 8)**

---

On February 25, 2021, Plaintiff Terrance Williams, who is incarcerated at the Shelby County Criminal Justice Center (the "Jail") in Memphis, Tennessee, filed a *pro se* complaint pursuant to 42 U.S.C. § 1983 and a motion for leave to proceed *in forma pauperis*. (ECF Nos. 1 & 2.)[1] On April 14, 2021, the Court granted leave for Williams to proceed *in forma pauperis*. (ECF No. 5.) On April 21, 2021, Williams filed an amended complaint. (ECF No. 6.) On May 7, 2021, Williams filed a "Motion To Dismiss For State Misconduct" (ECF No. 7 (the "Motion To Dismiss")) and a "Motion to Suppress False Affidavit And/Or Motion To Dismiss Indictment For

[1] Williams has other § 1983 proceedings pending before this Court. *Williams v. Davis*, No. 20-2254-JTF-atc (W.D. Tenn.) at ECF No. 9 (proceeding Williams's excessive force claim against Defendants Echols, Davis, and Harrell for an August 23, 2019 incident at the Jail, and dismissing the harassment claim); and *Williams v. Weirich*, No. 21-2741-SHM-tmp (W.D. Tenn.) at ECF No. 1 (alleging obstruction of justice and malicious prosecution; awaiting the Court's screening under the Prison Litigation Reform Act, 28 U.S.C. §§ 1915, *et seq*. (the "PLRA")).

State Misconduct" (ECF No. 8 (the "Motion To Suppress")). Williams's § 1983 complaints (ECF Nos. 1 & 6) are before the Court for screening under the PLRA. Williams's Motion To Dismiss and Motion To Suppress (the "Motions") are also before the Court for consideration.

Arising from certain July 19, 2020 events at the Jail, Williams's initial complaint alleges excessive force, verbal harassment, and inadequate prison grievance process against Defendants Shelby County, Officer Derrius[2] Davis, Officer Stewart, Officer Munphrey[3], and Officer Elliott (Davis, Stewart, Munphrey, and Elliott referred to as the "Officer Defendants"). (ECF No. 1 at PageID 1-2; ECF No. 1-1 at PageID 4-8.) Williams sues the Officer Defendants in their official and individual capacities. (ECF No. 1 at PageID 3.) Williams's initial complaint seeks: (1) "charges … against the [O]fficer Defendants; (2) injunctive relief; (3) $5 million from Shelby County; and (4) $10,000 apiece from the Officer Defendants. (*Id.*) He also seeks an investigation of Jail by the Federal Bureau of Investigation (the "FBI"). (ECF No. 1-1 at PageID 8.)

Williams's amended complaint is a mirror image of his initial pleading, except for their final page. (*See* ECF No. 6-1 at PageID 28; *cf*. ECF No. 1-1 at PageID 8.) After repeating the factual allegations and legal claims of Williams's initial pleading, the amended complaint corrects the spelling of Officer Munphrey's last name. (ECF No. 6-1 at PageID 28; *see also* ECF No. 4.) Given that (1) both complaints allege identical facts and legal claims and (2) no Defendant has yet

---

[2] Williams's complaint in this case sues "Derrius Davis." (ECF No. 1 at PageID 1-2.) Williams's complaint in No. 20-2254 sues "Darrius Davis." (No. 20-2254, ECF No. 1 at PageID 1.) Both complaints identify Davis as a correctional officer at the Jail, *see id.*, which suggests that both cases sue the same person. However, each case arises from different facts on different dates.

[3] On March 2, 2021, Williams submitted a correction to his complaint. (ECF No. 4 (the correct name for "the officer referred to as Munchie … is D.R.T. Officer Munphrey not Munford"); *cf*. ECF No. 1-1 at PageID 8 ("the officer referred to as 'Munchie'['s] real name is Officer Munford of the D.R.T. unit").)

been served with either version, the Court consolidates those filings as the operative pleading for PLRA screening purposes. (*See* ECF Nos. 1 & 6 (the "Consolidated Complaint").)

## I. <u>LEGAL STANDARDS</u>

### A. <u>Screening Requirements</u>

The Court is required to screen prisoner complaints and to dismiss any complaint, or any portion thereof, if the complaint —

(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or

(2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b); *see also* 28 U.S.C. § 1915(e)(2)(B).

In assessing whether the complaint in this case states a claim on which relief may be granted, the Court applies the standards of Fed. R. Civ. P. 12(b)(6), as stated in *Ashcroft v. Iqbal*, 556 U.S. 662, 677-79 (2009) and in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007). *Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010). The Court accepts a plaintiff's "well-pleaded" factual allegations as true and then determines whether the allegations "'plausibly suggest an entitlement to relief.'" *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 681). Conclusory allegations "are not entitled to the assumption of truth," and legal conclusions "must be supported by factual allegations." *Iqbal*, 556 U.S. at 679. Although a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), Rule 8 nevertheless requires factual allegations to make a "'showing,' rather than a blanket assertion, of entitlement to relief." *Twombly*, 550 U.S. at 555 n.3.

"*Pro se* complaints are to be held 'to less stringent standards than formal pleadings drafted by lawyers,' and should therefore be liberally construed." *Williams*, 631 F.3d at

383 (quoting *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004)). *Pro se* litigants, however, are not exempt from the requirements of the Federal Rules of Civil Procedure. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989); *see also Brown v. Matauszak*, 415 F. App'x 608, 612, 613 (6th Cir. Jan. 31, 2011) (affirming dismissal of *pro se* complaint for failure to comply with "unique pleading requirements" and stating "a court cannot 'create a claim which [a plaintiff] has not spelled out in his pleading'" (quoting *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975))).

### B. Requirements To State A Claim Under 42 U.S.C. § 1983

Plaintiff filed his Consolidated Complaint pursuant to 42 U.S.C. § 1983, which provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

To state a claim under § 1983, a plaintiff must allege two elements: (1) a deprivation of rights secured by the "Constitution and laws" of the United States (2) committed by a defendant acting under color of state law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970).

## II. ANALYSIS

### A. Claims Against Shelby County; Official Capacity Claims Against The Officer Defendants

Williams names Shelby County as a Defendant. (ECF No. 6-1 at PageID 21-22.) To the extent Williams sues the Officer Defendants in their official capacities (*see id.* at PageID 23), those claims are treated as claims against their employer, Shelby County. *See Jones v. Union Cnty., Tenn.*, 296 F.3d 417, 421 (6th Cir. 2002) (citing *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994)).

Shelby County may be held liable *only* if Plaintiff's injuries were sustained pursuant to an unconstitutional custom or policy. *See Monell v. Dep't. of Soc. Serv.*, 436 U.S. 658, 691-92 (1978). To demonstrate municipal liability, a plaintiff "must (1) identify the municipal policy or custom, (2) connect the policy to the municipality, and (3) show that his particular injury was incurred due to execution of that policy." *Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003) (citing *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993)). "[T]he touchstone of 'official policy' is designed 'to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 138 (1988) (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479-80 (1986) (emphasis in original)).

Williams does not allege that he suffered a constitutional deprivation due to a Shelby County policy or custom. (*See* ECF Nos. 6 & 6-1.) He instead seeks relief based on allegations that the Officer Defendants attacked him based on their personal animosity for Williams. (ECF No. 6-1 at PageID 27.) The Consolidated Complaint contends that the Officer Defendants assaulted and threatened Williams because of his soured relationship with Davis's sister. (ECF No. 6-1 at PageID 24 & 26.) Williams does not allege facts demonstrating a Shelby County policy or custom pursuant to which the Officer Defendants acted during the Incident.

The Consolidated Complaint does not state a cognizable claim against Shelby County or against the Officer Defendants in their official capacities, and such claims are **DISMISSED**.

**B. Excessive Force Claims Against Officer Defendants In Their Individual Capacity**

During a July 19, 2020 lockdown at the Jail, Williams and his cellmate complied with security directives, but other inmates "barricaded the doors." (ECF No. 6-1 at PageID 24.) After "the DRT sprayed chemical agents[,] released gas bombs[,] … [and] ordered everyone to get on

the ground," Officer Davis enterer Williams's cell and repeatedly sprayed his face. (*Id*. at PageID 24-25.) When Williams shielded his face from chemical agent, Davis again sprayed Williams and kicked him in the face. (*Id*. at PageID 25.) Williams tried to slide back, but Davis kicked Plaintiff's face twice more and punched his head and neck. (*Id*.) Williams "pushed [Davis] off," prompting Officer Stewart to approach the area and hit Williams on the head with handcuffs. (*Id*.) Williams fell backwards onto a table. Davis and Stewart then "proceeded to assault [Williams] together." (*Id*.) Officer Robertson then arrived on the scene and directed Davis and Stewart "to stop." (*Id*. (the foregoing events referred to as the "Incident").)

Robertson handcuffed Williams and his cellmate together and seated them in the hallway, where Officers Davis and Munphrey "repeatedly threatened" Williams. (*Id*.) Williams called for assistance from Sergeant Matthews, who ordered Officer Elliott to escort Williams to the Jail's medical office. (*Id*.) As Elliott escorted Williams, he "harassed and threatened [Williams] all the way [there]." (*Id*.)

At the medical office, Williams told the nurse that he "couldn't move [his] mouth." (*Id*.) The nurse told Williams to rinse out his eyes, and she then discharged him. (*Id*.) Once back in his cell, Williams told the on-duty sergeant of Plaintiff's mouth pain. (*Id*.) The sergeant escorted Williams back to the medical officer, where a different nurse dispensed pain medication and advised that Williams needed x-rays. (*Id*.) The next day, Williams was taken to Regional One Hospital, where doctors x-rayed him and diagnosed a dislocated jaw. (*Id*.) The doctors sedated Williams, re-aligned his jaw, and gave him pain medication. (*Id*.) When Williams returned to the Jail, "staff refused to give me my medication, assumably [sic] out of spite." (*Id*.) At Williams's subsequent check-up at Regional One, doctors x-rayed him and said he "might have to have

surgery because my jaw bone was still out of line." (*Id.*) Williams unsuccessfully grieved the Incident. (*Id*. at PageID 27-28.)

The Court construes Williams's allegations as claims for excessive force.

The Eighth Amendment protects a convicted inmate from cruel and unusual punishments, including "the unnecessary and wanton infliction of pain." *See Hudson v. McMillian*, 503 U.S. 1, 5 (1992) (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)); *Wilson v. Seiter*, 501 U.S. 294 (1991). The Eighth Amendment's subjective standard takes into account a defendant's state of mind. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976). Establishing an Eighth Amendment claim of excessive force requires a showing that (1) "the alleged wrongdoing was objectively 'harmful enough' to establish a constitutional violation," and (2) "'the officials act[ed] with a sufficiently culpable state of mind.'" *Hudson*, 503 U.S. at 8 (quoting *Wilson*, 501 U.S. at 298, 303). The "core judicial inquiry" is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Id.* at 6 (citing *Whitley*, 475 U.S. at 320-21).

Pretrial detainees' protection against excessive force is provided by the Fourteenth Amendment's Due Process Clause. That provision protects a pretrial detainee in state custody against the use of excessive force that amounts to punishment. *Leary v. Livingston Cnty.*, 528 F.3d 438, 443 (6th Cir. 2008) (quoting *Graham v. Connor*, 490 U.S. 386, 395 n. 10 (1989). Pretrial detainees' excessive force claims must be analyzed under a Fourteenth Amendment standard of objective reasonableness. In *Kingsley v. Hendrickson*, 76 U.S. 389, 397, 135 S. Ct. 2466, 2472-73, 192 L.Ed.2d 416 (2015) (rejecting a subjective standard that takes into account a defendant's state of mind in pretrial detainee cases). That objective standard "turns on the 'facts and circumstances of each particular case.'" *Id.* (quoting *Graham*, 490 U.S. at 396). The Court must

judge the reasonableness of a particular use of force "from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." *Id.* Under an objective reasonableness inquiry, "the question is whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham*, 490 U.S. at 397 (citations omitted). The proper application of this standard requires consideration of the following factors:

> the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

*Kingsley*, 135 S. Ct. at 2473. This list is not exhaustive but illustrates some of the "objective circumstances potentially relevant to a determination of excessive force." *Id.*

The present record is silent as to whether Williams was a pretrial detainee or a convicted prisoner as the time of the Incident. (*See* ECF Nos. 6 & 6-1.) However, even under the more exacting subjective standard of the Eighth Amendment, Williams sufficiently alleges an individual capacity claim for excessive force against Officers Davis and Stewart. The Consolidated Complaint alleges that Davis "repeatedly … sprayed" Williams in his cell, even though Plaintiff and his cellmate were lying on the cell's floor in compliance with lockdown protocols. (ECF No. 6-1 at PageID 24.) Davis next kicked Williams in the face when Plaintiff recognized Davis as he sprayed him. (*Id*. at PageID 25.) Nothing in the record suggests that Williams provoked Davis into kicking or repeatedly spraying him. (*See id*.) Davis kicked Williams twice more, and punched him as well, without any threat posed by Plaintiff. (*See id*.) When Stewart arrived shortly thereafter, he struck Williams's head with handcuffs -- without any suggestion of danger posed by Williams. Stewart and Davis then together assaulted Williams, which continued until Robertson arrived and stopped them. (*Id*.) Nothing in the Consolidated Complaint suggests that Williams

was a danger to Davis, Stewart, other Jail personnel, or fellow inmates at the time of the Incident. Rather, Williams was, at that time, "in excruciating pain" from the spray, the face-kicks, the head-punches, and the neck-strikes. (*Id.*) These facts afford a plausible inference that Davis's and Stewart's spraying, kicking, and punching of the wounded Williams were objectively unreasonable and harmful enough, in light of the Incident's facts and circumstances, to demonstrate a constitutional violation. *See Hudson*, 503 U.S. at 8; *Graham*, 490 U.S. at 397.

The Consolidated Complaint alleges facts about Davis's and Stewart's states of mind that underscore this conclusion. Williams supposedly possessed a restraining order against Davis, who had repeatedly harassed and assaulted Williams after a failed relationship between Plaintiff and Davis's sister. (ECF No. 6-1 at PageID 24 & 26 ("Davis's sister is my ex-fiance").) During Davis's and Stewart's joint assault of Williams during the Incident, Davis stated "that was my sister, [expletive]!" (*Id.* at PageID 25.) These allegations suggest Davis and Stewart harbored malicious or sadistic intent as retribution for Williams's broken relationship with Davis's sister. By the time Robertson took Williams into the hallway, Plaintiff was handcuffed and thus not a threat to anyone. (*Id.* at PageID 25.) Davis's and Stewart's forecasts of continued force were not a good-faith effort to restore order.

For these reasons, Plaintiff sufficiently alleges facts that demonstrate Davis and Stewart used objectively harmful excessive force and acted with a sufficiently culpable state of mind during the Incident. *See Hudson*, 503 U.S. at 8; *Graham*, 490 U.S. at 397. Williams's excessive force claims against Davis and Stewart in their individual capacities **SHALL PROCEED**.

The Consolidated Complaint does not, however, state a cognizable claim for Eighth Amendment deprivation by Munphrey and Elliott. After Robertson extricated Williams from the Incident and into the hallway, Munphrey "sa[id] 'We're not through with you yet! We're gonna

take you in the closet!'" (ECF No. 6-1 at PageID 25-26.) Munphrey next yelled: "Shut the [expletive] up! I don't wanna hear [expletive] you got to say. You shouldn't have been [expletive] with his sister." (*Id.* at PageID 26.) En route to the medical office after the Incident, Elliott "harassed and threatened [Williams] all the way, saying 'Oh, we gone get you again. You're not tough now, are you!' and 'Wait until next time, I'm the one who gone get you!'" (*Id.* at PageID 26.) At most, Williams alleges that Munphrey and Elliott verbally harassed him. The Consolidated Complaint does not allege that Munphrey or Elliot physically touched Williams.

It is well settled that verbal abuse or harassment at the hands of prison officials (or other prisoners) does not constitute a violation of the Eight Amendment. *See, e.g., Johnson v. Unknown Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004) (holding that even harassment that constitutes "shameful and utterly unprofessional behavior" is insufficient to constitute cruel and unusual punishment); *Ivey v. Wilson*, 832 F.2d 950, 954-55 (6th Cir. 1987) ("Not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment."); *Violett v. Reynolds*, 76 F. App'x 24, 27 (6th Cir. 2003) (holding that an officer's "reprehensible" action of offering of sexual favors to the plaintiff-inmate did "not rise to the level of a constitutional violation"). Williams's Eighth Amendment claims against Munphrey and Elliott in their individual capacities are **DISMISSED**.

**C. <u>Verbal Harassment Claims Against Davis And Stewart</u>**

In addition to the statements attributed to Munphrey and Elliott as discussed *supra*, Williams alleges that, during Davis and Stewart's joint assault on him, Davis yelled: "That was my sister, [expletive]!" (ECF No. 6-1 at PageID 25.) When Williams told Stewart about Plaintiff's protective order against Davis, Stewart "replied 'Shut up, [expletive].'" (*Id.*)

To the extent Williams alleges these statements as claims for verbal harassment by Davis and Stewart, Williams's claims fail as a matter of law for the reasons explained *supra*. *See Johnson*, 357 F.3d at 546; *Ivey*, 832 F.2d at 954-55. Williams's verbal harassment claims against Davis and Stewart are **DISMISSED** for failure to state a claim to relief.

**D. Claims For Inadequate Prison Grievance Process**

Williams alleges that his grievances about the Incident were unsuccessful because "the staff of Internal Affairs was once staff of Shelby County Jail and they're all in cahoots together covering up these incidents." (ECF No. 6-1 at PageID 27.) To the extent Williams alleges these facts in support of a claim for inadequate prison grievance process, his effort fails.

"There is no inherent constitutional right to an effective prison grievance procedure." *See LaFlame v. Montgomery Cnty. Sheriff's Dep't*, 3 F. App'x 346, 348 (6th Cir. 2001) (citing *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996)). A § 1983 claim cannot be premised on contentions that the grievance procedure was inadequate. *Id.*

The Consolidated Complaint's claims for inadequate prison grievance process are **DISMISSED** for failure to state a claim to relief.

## III. AMENDMENT UNDER THE PLRA

The Sixth Circuit has held that a district court may allow a prisoner to amend his complaint to avoid a *sua sponte* dismissal under the PLRA. *Lucas v. Chalk*, 785 F. App'x 288, 291 (6th Cir. 2019) (citing *LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013) ("[W]e hold, like every other circuit to have reached the issue, that under Rule 15(a) a district court can allow a plaintiff to amend his complaint even when the complaint is subject to dismissal under the PLRA")); *see also Brown v. R.I.*, 511 F. App'x 4, 5 (1st Cir. 2013) (per curiam) ("Ordinarily, before dismissal for failure to state a claim is ordered, some form of notice and an opportunity to cure the deficiencies

in the complaint must be afforded"). Leave to amend is not required where a deficiency cannot be cured. *Gonzalez-Gonzalez v. United States*, 257 F.3d 31, 37 (1st Cir. 2001) ("This does not mean, of course, that every *sua sponte* dismissal entered without prior notice to the plaintiff automatically must be reversed. If it is crystal clear that ... amending the complaint would be futile, then a *sua sponte* dismissal may stand."); *Curley v. Perry*, 246 F.3d 1278, 1284 (10th Cir. 2001) ("We agree with the majority view that *sua sponte* dismissal of a meritless complaint that cannot be salvaged by amendment comports with due process and does not infringe the right of access to the courts"). The Court grants Plaintiff leave to amend under the guidelines that the Court sets forth below.

## IV. MOTION TO DISMISS AND MOTION TO SUPPRESS

Williams's Motion To Dismiss seeks dismissal of the State of Tennessee's criminal indictment against Williams for kidnapping and rape. (ECF No. 7 at PageID 37-38 (arguing that the criminal charges are "based on malicious, selective, vindictive, and outrageous prosecution").) The Motion To Suppress repeats Williams's request for dismissal of Tennessee's indictment and asks for suppression of the alleged victim's affidavit. (ECF No. 8 at PageID 61 & 65 ("the alleged victim knowingly made false statements … to mislead officers … to have [Williams] arrested").) None of the Motions' arguments has merit.

As an initial matter, to the extent the Motions ask the Court to dismiss state criminal charges against Williams, such relief is exclusively available in a petition for writ of habeas corpus. The proper vehicle for pursuing "immediate release or a speedier release" is a habeas corpus petition. *See Wilson v. Williams*, 961 F.3d 829, 838 (6th Cir. 2020) (citing *Preiser v. Rodriguez*, 411 U.S. 475, 489 (1973)). A plaintiff seeking release must do so "through a writ of habeas corpus, not through § 1983." *Wershe v. Combs*, 763 F.3d 500, 504 (6th Cir. 2014) (citing *Preiser*, 411 U.S. at 500). Such claim, in effect, attacks 'the very duration of ...

physical confinement,' and thus lies at 'the core of habeas corpus.'" *Wilkinson v. Dotson,* 544 U.S. 74, 79, 125 S.Ct. 1242, 161 L.Ed.2d 253 (2005) (citing *Preiser,* 411 U.S. at 487–88). Although it is not clear from the record whether Williams has yet stood trial[4], it is, in any event, outside the purview of this Court to consider the merits of a state criminal indictment. Nothing in the Motions persuades this Court otherwise.

To the extent the Motions argue that assistant district attorney Ray Gilbert and district attorney general Amy Weirich violated Williams's constitutional rights, those arguments lack merit and do not support the Motions' requested relief. Gilbert is the prosecutor in Williams's underlying criminal case, and Weirich "influenced [and] condoned" Gilbert's prosecution. (ECF No. 8 at PageID 63 & 64 (alleging "prosecutorial misconduct, vindictive prosecution, or selective[] prosecut[ion]" and arguing that the district attorney "recklessly disregarded the truth and pursue[d] falsified charges").) Prosecutors, however, are absolutely immune from suit for actions taken in initiating and pursuing criminal prosecutions because that conduct is "intimately associated with the judicial phase of the criminal process." *Imbler v. Pachtman*, 424 U.S. 409, 430-31 (1976). "A prosecutor's decision to initiate a prosecution, including the decision to file a criminal complaint

[4] The Tennessee Department of Correction Felony Offender Information website lists several entries for the name "Terrance Williams." *See* https://apps.tn.gov/foil/results.jsp. The Consolidated Complaint provides no information for the Court to discern which of those individuals, if any, is Plaintiff.

If Williams has, in fact, been sentenced to confinement and his Motions argue that such confinement is unconstitutional, Williams would have to demonstrate that the confinement was "declared invalid by a state tribunal authorized to make such determination" or that it was "called into question by a federal court's issuance of a writ of habeas corpus" in order to recover damages. *Heck v. Humphrey,* 512 U.S. 477, 486–87 (1994). Because the Motions do not demonstrate that (1) Williams's putative confinement was declared invalid by a state tribunal and (2) a writ of habeas corpus has issued, the Motions' arguments about unconstitutional confinement, if any, do not support the relief sought by the Motions.

or seek an arrest warrant, is protected by absolute immunity." *Howell v. Sanders*, 668 F.3d 344, 351 (6th Cir. 2012). A prosecutor's decision to bring or not bring charges against a particular person is protected by prosecutorial immunity. *Koubriti v. Convertino*, 593 F.3d 459, 467 (6th Cir. 2010). Williams argues only that the charges against him are without evidentiary support. Gilbert's and Weirich's prosecution of Williams arose from actions they took in their traditional role as advocates for the State, and so they are immune from suit for those acts. Williams's prosecutorial misconduct arguments do not support the relief sought in the Motions.

The result is the same for the Williams's arguments about Sergeant C. Wages of the Memphis Police Department. (ECF No. 8 at PageID 63 (alleging that Wages "participated in the wrongful criminal prosecution because the victim advised him … that the story she told … was not true, but he still charged me with charge(s) that he knew was not true").) It is well established that witnesses who testify at trial — whether government officials (including police officers) or lay witnesses — are entitled to absolute immunity from suit based on that testimony. *Briscoe v. LaHue*, 460 U.S. 325, 334–46 (1983). "[G]rand jury witnesses … enjoy the same immunity as witnesses at trial." *Rehberg v. Paulk*, 566 U.S. 356, 369 (2012). No justification exists to "distinguish law enforcement witnesses from lay witnesses," and so the Supreme Court has rejected the argument that absolute immunity does not apply to grand jury testimony provided by police officers. *Id*. at 367. Because Williams's allegations against Wages are based solely on Wages's allegedly false grand jury testimony, *see* ECF No. 8 at PageID 63, and because the Sergeant is entitled to absolute immunity for that testimony, the Motions' arguments about Wages are without merit and do not support the relief Williams seeks.

For all of these reasons, the Motions (ECF Nos. 7 & 8) are **DENIED**.

## V. CONCLUSION

For all of the reasons explained above:

(1) The Consolidated Complaint's (ECF Nos. 1 & 6) (a) claims against Shelby County, (b) official capacity claims against Davis, Stewart, Munphrey, and Elliott, (c) Eighth Amendment claims against Munphrey and Elliott in their individual capacities, (d) verbal harassment claims against Davis and Stewart in their individual capacities, and (e) claims for inadequate prison grievance process (collectively, the "Dismissed Claims") are **DISMISSED WITHOUT PREJUDICE** for failure to state a claim on which relief can be granted, pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1). Leave to amend the Dismissed Claims is **GRANTED**. Any amendment must be filed within twenty-one (21) days after the date of this order. Plaintiff is advised that an amended complaint will supersede the original complaint and must be complete in itself without reference to the prior pleadings. The amended complaint must be signed, and the text of the amended complaint must allege sufficient facts to support each claim without reference to any extraneous document. Any exhibits must be identified by number in the text of the amended complaint and must be attached to the complaint. All claims alleged in an amended complaint must arise from the facts alleged in the original complaint. Each claim for relief must be stated in a separate count and must identify each Defendant sued in that count. If Plaintiff fails to file an amended complaint within the time specified, the Court will dismiss the Dismissed Claims with prejudice and enter judgment as to the Dismissed Claims. The Court recommends that any such dismissal should be treated as a strike pursuant to 28 U.S.C. § 1915(g). *See Simons v. Washington*, No. 20-1406, 2021 WL 1727619, at *1 (6th Cir. May 3, 2021).

(2) The Consolidated Complaint's (ECF Nos. 1 & 6) excessive force claims against Officer Davis and Officer Stewart in their individual capacities **SHALL PROCEED**. The Clerk is ORDERED to issue process for Officer Davis and Officer Stewart and to deliver that process to

the U.S. Marshal for service. Service shall be made on Officer Davis and Officer Stewart pursuant to Federal Rule of Civil Procedure 4(e) and Tennessee Rules of Civil Procedure 4.04(1) and (10) by registered or certified mail or personally if mail service is not effective. All costs of service shall by advanced by the United States. It is further ORDERED that Williams shall serve a copy of every subsequent document he files in this case on the attorneys for Officer Davis and Officer Stewart or on those Defendants personally if he is unrepresented. Plaintiff shall make a certificate of service on every document he files. Plaintiff shall familiarize himself with the Federal Rules of Civil Procedure and this Court's Local Rules.[5] Plaintiff is reminded that he must promptly notify the Clerk, *in writing*, of any change of address or extended absence. Failure to comply with these requirements, or any other order of the Court, may result in the dismissal of this case without further notice.

(3) As it is not within the province of this Court to ask the FBI to undertake an investigation of state correctional facilities, *see* ECF No. 6 at PageID 23, Williams's injunctive relief request for an FBI investigation of the Jail is **DISMISSED**. Furthermore, because Williams does not have standing to assert claims on behalf of inmates other than himself, *see Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992), Plaintiff's injunctive relief claim to "prevent the [challenged] misconduct … from happening to anyone else," *see* ECF No. 6 at PageID 23, is **DISMISSED**.

**SO ORDERED**, this 9th day of February, 2022.

*s/John T. Fowlkes, Jr.*
JOHN T. FOWLKES, JR.
UNITED STATES DISTRICT JUDGE

[5] A copy of the Local Rules may be obtained from the Clerk or on the Court's website at https://www.tnwd.uscourts.gov/pdf/content/LocalRules.pdf.